# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James F. Holderman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 7151 | **DATE** | 3/23/2001 |
| **CASE TITLE** | MANFREDINI vs. LOCAL 734, WELFARE/PENSION FUND et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Pursuant to Memorandum Opinion and Order entered this day, plaintiff's motion for summary judgment is denied and defendant Local 734 Pension Fund's motion for summary judgment is granted. By agreement of the parties, defendants Local 734 Welfare Fund and Thomas Boehm are dismissed. Defendant Pension Fund's request for attorney's fees is denied. This action is dismissed in its entirety.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | |
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | MAR 2 6 2001 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 3/23/2001 | |
| | | | date mailed notice | |
| | JS  courtroom deputy's initials | | JS mailing deputy initials | |
| | | Date/time received in central Clerk's Office | | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GIACOMO MANFREDINI, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 00 C 7151 |
| ) | |
| LOCAL 734, WELFARE/PENSION FUND, ) | |
| and THOMAS BOEHM, FUND ) | |
| ADMINISTRATOR, ) | |
| ) | |
| Defendants. ) | |

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, District Judge:

Plaintiff Giacomo Manfredini filed this action in the Circuit Court of Cook County seeking review of a determination made by the Trustees of defendant Local 734 Pension Fund ("the Fund") regarding pension benefits due him. The Fund then removed the action to this court. Both sides have filed cross-motions for summary judgment. All the relevant facts are undisputed. Both parties ask this court to construe the meaning of the Local 734 Pension Plan ("the Plan") as a matter of law and to determine whether the Fund's interpretation of the Plan was arbitrary and capricious. For the following reasons, plaintiff Manfredini's motion for summary judgment is DENIED. Defendant the Fund's motion for summary judgment is GRANTED.

1

# STATEMENT OF FACTS[1]

I. <u>The Plan</u>

The relevant terms of the Pension Plan which form the basis of the parties' dispute are as follows. Article 3 of the Plan is entitled "Participation and Service." Section 3.5 of the Plan is entitled "Benefit Service," and states that "[t]he amount of benefit payable to or on behalf of an Employee shall be determined on the basis of Benefit Service subject to the Break in Service provisions of Section 3.6." That section goes on to state the formula by which years of "Benefit Service" are calculated. The "Break in Service" provision of Section 3.6(d), in turn, provides that "[i]f a participant incurs a break in service after having accrued a vested benefit and subsequently returns to Covered Employment, his pre-break and post-break Benefit Service shall be aggregated to determine credited service under this Plan; provided however . . . (2) The Pension, if any, payable to an Employee whose years of Benefit Service were separated by one or more Breaks in Service shall be equal to the sum of his Accrued Pension at the time of each Break in Service based on each segment of his Benefit Service and the benefit in effect at the time of such Break in Service . . ." The Local 734 Local Summary Plan Description further explains: "[i]f you are vested, you cannot lose your vesting or benefit service." The Local 734 Summary Plan Description also states the requirements for a regular pension: you must attain age 60 while working in Covered Employment and have 20 or more years of Benefit Service.

Article 5 of the Plan is entitled "30 and Out Normal Retirement Pension." ("30 and Out"

---

[1] The following statement of facts comes from the parties' "Joint Statement of Material Fact as to Which There is No Dispute" and its accompanying exhibits, which the parties submitted jointly in lieu of the usual Local Rule 56.1(a) and 56.1(b) statements of material facts.

2

Pension). Section 5.1 states that the requirements for the "30 and Out" Pension: "A Participant shall be eligible for, and may elect, a 30 and Out Normal Retirement Pension if Retirement occurs for a reason other than Disability prior to his Normal Retirement Date, provided he has completed at least 30 years of Benefit Service." Section 5.4 states that a participant who meets the requirements for the "30 and Out" Pension shall receive a monthly payment of $1,000.[2] The Local 734 Summary Plan Description states: "Under the 30-and-out pension, you may begin receiving a normal pension once you have earned 30 years of benefit service under the plan -- regardless of age. This means, for example, if you have 30 years of benefit service at age 50 and decide to retire, your monthly retirement benefit will be $2,000 in the single life form." The Summary Plan Description goes on to state: "You may accumulate the 30 years continuously or with breaks-in-service as long as you do not lose service due to a break before you were vested."

Under section 4.09 of the Pension Fund's Trust Agreement, the Fund's Trustees ("the Trustees") have the power to formulate and promulgate a pension plan and all necessary rules and regulations which they deem necessary or desirable to facilitate the proper administration of the Fund. Under section 4.16, the Trustees have "the power to construe to provisions of this Agreement and the terms and regulations of the Pension Plan, and any construction adopted by the Trustees in good faith shall be binding upon the Union, Employees, and Employers."

II. The Relevant Undisputed Facts

Defendant Local 734 Pension Fund (the "Fund") is a jointly administered multi-employer

---

[2]While the copy of the Plan submitted to this court states that the monthly payment under the "30 and Out" Plan is $1,000, the Summary Plan Description states that the benefit payable is $2,000. Plaintiff requested a $2,000 "30 and Out" benefit, and the Fund has not questioned whether plaintiff would be entitled to that amount under the "30 and Out" Pension.

3

defined benefit pension fund and employee benefit plan within the meaning of ERISA.[3] Plaintiff Manfredini is at present a participant in the Local 743 Pension Fund. He first became a participant in the Fund on December 31, 1958, and worked in "Covered Employment" under the Local 734 Pension Plan ("the Plan") until May 3, 1986. Manfredini left Covered Employment after May 3, 1986 with a vested benefit, and did not resume work in Covered Employment under the Plan until July 14, 1999. In late 1999, Manfredini asked the Fund to provide him with the calculation of his then-current pension benefit. Manfredini was provided with a computer printout showing an entitlement to an unadjusted monthly benefit of $831.25. Manfredini questioned the calculation.

In response to Manfredini's inquiry, the Fund provided him with a written explanation by the Fund's actuary and a copy of the Plan in a letter dated May 30, 2000. The letter stated that, under Article 3.6(d) of the Local 734 Pension Plan document, when continuous service has been broken, each segment of service is determined by the benefit then in effect.

By a letter dated June 7, 2000, Manfredini, through counsel, appealed the benefit calculation and requested an opportunity to appear before the Fund's Trustees at their August 2, 2000 meeting. This letter explained Manfredini's contention that he was entitled to the "30 and Out" Pension in the amount of $2,000 per month. The letter cited the "30 and Out" provision of the Plan, section 5.1, and explained that Manfredini was fully vested when he left employment, such that he has had no permanent break in employment. The letter explained Manfredini's contention that he had accumulated 30 years of Benefit Service within the meaning of the Plan. Manfredini, his son, and his attorney appeared before the Fund's Trustees at the August 2, 2000 meeting and submitted the

---

[3]Defendants Local 744 Welfare Fund and Thomas Boehm are not a proper parties to this action and are dismissed with prejudice by agreement of the parties.

basis of the appeal through counsel.

By a letter dated August 23, 2000, the Fund Administrator advised Manfredini of the Trustees' decision on appeal and the reasons therefore. This letter explained the reasoning for the decision as follows. Manfredini is eligible for a 30 year pension, but the pension has two components used in calculating the monthly amount. The first component is years of Benefit Service, and the second is the applicable benefit level. Where there is a break in service after accruing a vested benefit followed by a return to Covered Employment, both the pre-break Benefit Service and the post-break Benefit Service years are combined to determine credited service, but that the benefit is calculated by treating each segment separately. The pre-break benefit is determined by multiplying the years of pre-break Benefit Service by the benefit level at the time of the break in service. The years of post-break Benefit Service are multiplied by the current benefit level. Those two amounts are then added together and the sum is the pension. The letter stated that this manner of calculating the benefit is explained in Section 3.6(d) of the Plan and at page 6 of the 1999 Summary Plan description.

## STANDARD OF REVIEW

Under Rule 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324 106 S. Ct. 2548, 2553 (1986). There is no issue for trial "unless there is sufficient evidence favoring the

5

nonmoving party for a jury to return a verdict for that party." Anderson, 477 U.S. at 249, 106 S. Ct. at 2511.

## ANALYSIS

The heart of the parties' dispute is what constitutes "Benefit Service" under the Plan. The Trustees interpreted the Plan by looking to the "Benefit Service" provision of the Plan, section 3.5, complete with its "Break in Service" conditions, section 3.6(d)(2), providing for different benefit levels for each segment of work history. Manfredini argues that the Benefit Service and Break in Service provisions do not even come into play because the "30 and Out" Pension allows for a set benefit of $2,000, regardless of breaks in service, as long as the employee did not lose years of service because of a break in service prior to vesting.

The Plan gives the Fund Trustees the power to construe to provisions of the Fund Agreement and the terms and regulations of the Pension Plan in good faith. As such, this court's review of the Trustees' decision is deferential. See Exbom v. Central States, Southeast and Southwest Areas Health and Welfare Fund, 900 F.2d 1138, 1142 (7th Cir. 1990) (concluding that the deferential standard of review applies where the trustees' discretion is "limited only by the requirement that decisions be taken in good faith"). This court's task is only to determine whether the Trustees' decision was arbitrary and capricious. See Trombetta v. Cragin Federal Bank for Sav. Employee Stock Ownership Plan, 102 F.3d 1435, 1438 (7th Cir. 1996). The arbitrary and capricious standard is the least demanding form of judicial review of administrative action, and any questions of judgment are left to the administrator of a plan. Id. Absent special circumstances such as fraud or bad faith, a decision may not be deemed arbitrary and capricious so long as it is possible to offer a reasoned explanation, based on the evidence, for that decision. Id. As long as the trustee makes an

6

"informed judgment and articulates an explanation for it that is satisfactory in light of the relevant facts, i.e., one that makes a 'rational connection' between the issue to be decided, the evidence in the case, the text under consideration, and the conclusion reached," the benefits decision will be upheld. Exbom, 900 F.2d at 1143.

Perhaps understanding that this standard is likely to be fatal to his claim, Manfredini fails to cite to any Seventh Circuit law for the standard by which this court should judge the Trustee's decision. Instead, he argues that this court should inquire into whether the Trustees' interpretation is consistent with the goals of the Plan, whether the interpretation renders any language in the Plan meaningless or internally inconsistent, and whether the interpretation is contrary to the clear language of the Plan. Plaintiff argues that the Trustees' interpretation cannot be correct because the "30 and Out" provisions are clear on their face, and that if they were to be controlled by other limitations in different plan provisions, then the language would have been incorporated into the "30 and Out" provisions of the Plan. Plaintiff argues that the section 3.6 "Break in Service" provision "does not limit or restrict one who has the benefit time in service of over 30 years."

This court is not unsympathetic to plaintiff's reading of the Plan. The "30 and Out" provisions of the Plan appear to cover employees, such as plaintiff, who have accrued more than 30 years of covered service, regardless of post-vesting breaks in service, especially in light of the Local 734 Summary Plan Description's statement that "[y]ou may accumulate the 30 years continuously or with breaks-in-service as long as you do not lose service due to a break before you were vested." It is undisputed that plaintiff has over 30 years of Covered Employment, and that he has not lost any time due to a break in service before vesting. However, Section 5.1 of the Plan provides that a Participant may elect a "30 and Out" Pension only if he has completed at least 30 years of "Benefit

7

Service" within the meaning of the Plan. The Plan Description also states that a participant is elligible for the "30 and Out" Pension if the participant has completed 30 years of "Benefit Service." The Trustees looked to the "Benefit Service" provision of the Plan, section 3.5, along with the "Break in Service" conditions refered to in that section and contained in section 3.6, and concluded that the break in service limitation providing for benefits to be calculated by the benefit applicable at the time the break in service occurred, limits the amount of Benefit Service plaintiff has accrued. In essence, the Trustees read the limitations on "Benefit Service" in the "Break in Service" provisions to trump the language of the "30 and Out" provision. However, while Manfredini's complaint about the lack of consistency between the "30 and Out" provisions and the "Benefit Service" / "Break in Service" provisions may be valid, to prevail in this litigation, he must demonstrate that the Trustees' application of the break in service limitations here was not just wrong, but "downright unreasonable." Chojnacki v. Georgia-Pacific Corp., 108 F.3d 810, 816 (7th Cir. 1997) (citation omitted). In Russo v. Health, Welfare & Pension Fund, 984 F.2d 762, 766 (7th Cir. 1993), the Seventh Circuit held that the arbitrary and capricious standard is satisfied where the trustees' decision "makes sense." Here, the Trustee's interpretation is not the only interpretation which "make sense"; plaintiff's interpretation does as well. However, it does "make sense" that in order to determine if an employee has 30 years of "Benefit Service," one must look to the "Benefit Service" provision of the Plan, along with the "Break in Service" provision referenced in it. That is all that is required for this court to uphold the Trustees' decision.

Even employing the standard proposed by plaintiff, this court still cannot adopt his reading of the Plan. While the Trustee's reading of the Plan appears to render some language of the Plan meaningless and appears internally inconsistent, it is not necessarily so. At first blush, the Trustees'

8

interpretation seems to render the Local 734 Summary Plan Description's statement, "[y]ou may accumulate the 30 years continuously or with breaks-in-service as long as you do not lose service due to a break before you were vested," meaningless. Under the plain language of that statement, lost years dues to breaks in service prior to vesting do not count towards the 30 years. And, under the language as interpreted by the Trustees, breaks in service post-vesting, such as in Manfredini's case, limit the pensions employees may receive to the aggregate of their accrued pensions at the end of each segment of service, so they may not receive the "30 and Out" Pension amount. However, there is a category of employees who are eligible for the "30 and Out" Pension even if they have incurred breaks in service. Section 3.6(c) of the Plan provides that if a non-vested participant does not incur a break in service so as to lose years of service under 3.6(b), then his pre-break and post-break Benefit Service shall be aggregated to determine credited and vesting service under the Plan. That section goes on to state that the post-break Benefit Service shall be determined separately from any pre-break Benefit Service, but only if he has two consecutive plan years of Covered Employment. As such, a non-vested participant who has incurred a break in service, but who did not lose years under section 3.6(b) by incurring a break in service for the greater of the number of years of his pre-break vesting service or five consecutive one-year breaks in service, and did not have two consecutive years of Covered Employment, could qualify for the "30-and-Out" Pension, and thereby not have his benefits reduced to reflect the benefit level at the time of incurring his breaks in service. As such, the "30 and Out" and the "Benefit Service" / "Break in Service" provisions are not entirely inconsistent, and the Trustee's interpretation does not render meaningless the Local 734 Summary Plan Description's statement that a participant may accumulate the 30 years even with breaks in service.

9

Moreover, Manfredini's reading of the "30 and Out" provisions would also have the potential to render provisions of the Plan superfluous and is inconsistent with other provisions of the Plan. Manfredini's argument is that any Plan participant who has accumulated 30 years of covered service is entitled to opt for the "30 and Out" Pension, as long as the participant did not lose any years of Covered Employment by incurring a break in service prior to accruing a vested benefit. However, the "Break in Service" provision of the Plan, section 3.6(d)(2), states that a maximum of 33.33 years of Benefit Service shall be applied to provide all segments of an employee's accrued pension, and that if an employee has worked for more than 33.33 years, earlier years shall be disregarded if a greater benefit will result. As such, the Plan contemplates that there will be participants with greater than 30 years of service, such as Manfredini, who incur a break in service after having accrued a vested benefit and subsequently return to Covered Employment. If Manfredini's reading of the Plan were correct, section 3.6(d)(2)'s provision for employees with greater than 33.33 years of service would be superfluous, because all employees with 30 years of Covered Employment and breaks in service, who had not lost years by breaks in service prior to vesting, would be eligible for the "30 and Out" Pension, regardless of how and when their breaks in service occurred.

The above anlysis makes clear that the Plan itself is ambiguous and internally inconsistent. Given the ambiguity in the Plan, the Trustees interpreted the Plan in a manner that results in the Fund paying a lower level of benefits. This court cannot say that the Trustees' choice of interpretations was arbitrary or capricious, given that both their interpretation and plaintiff's proposed interpretation of the Plan seemingly render another part of the Plan superfluous and internally inconsistent.

## CONCLUSION

For all the reasons stated, plaintiff Giacomo Manfredini's motion for summary judgment is DENIED. Defendant Local 734 Pension Fund's motion for summary judgment is GRANTED. By agreement of the parties, Local 734 Welfare Fund and Thomas Boehm, the Fund Administrator, are dismissed from this litigation. This case is DISMISSED in its entirety. Because plaintiff's position in this litigation was not unreasonable, the Fund's request for attorney's fees as the prevailing party is DENIED.

ENTER:

*James F. Holderman*

JAMES F. HOLDERMAN

United States District Judge

DATE: March 23, 2001